———o———

## No. 6423.

## ILLINOIS CENTRAL RAILROAD COMPANY vs. J. L. BEER & COMPANY.

### Syllabus.

Plaintiff must prove the allegation essential to his recovery, or judgment will go against him.

Appeal from the Civil District Court for the Parish of Orleans, Division "C," No. 106,693. Honorable E. K. Skinner, Judge.

Lemle, Jones & Moreno, for plaintiff and appellant.

Dart, Kernan & Dart, and Chas. Rosen, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

This is a suit in damages for failure to execute an obligation alleged to have been assumed by defendants.

Plaintiff avers that E. F. Sherman shipped on plaintiff's road from Tustin, Michigan, on April 5th, 1912, two cars of potatoes consigned to his own order at New Orleans, notify Jacob Stich; that said potatoes reached New Orleans, and in April, 1912, were delivered to J. L. Beer

— 400 —

& Company, who did not then surrender the bills of lading, but who agreed that they would obtain the bills of lading and deliver them to petitioner; that at the time of the delivery of the potatoes to Beer & Company the bills of lading properly endorsed were in the possession of the First National Bank of Allozan, Michigan; that owing to its inability to deliver the potatoes on presentation of the bills of lading, the plaintiff was compelled to pay the First National Bank the value of said potatoes, say $1,320; that by reason of said payment the plaintiff acquired the ownership of said bills of lading and of the potatoes; that J. L. Beer & Company owe them the said sum of $1,320, which they refuse to pay, except $382.39 which they allege is the only balance in their hands after reserving what was due to them, and plaintiff prays for judgment for $937.61 against J. L. Beer & Company.

Defendants, Beer & Company, deny that plaintiff delivered to them the potatoes, or that they agreed to obtain and deliver the bills of lading; and they aver that some time in April, 1912, one, Tanner, an agent of E. F. Sherman, called upon them and informed them that Sherman had shipped to New Orleans to his own order, notify Jacob Stich, two cars of potatoes, which had arrived in bad condition and were rejected by Stich; that Tanner asked Beer & Co. to buy the potatoes, which they agreed to do provided they were put in merchantable condition; that the plaintiff company delivered the potatoes to Tanner who hired the labor to handle the potatoes, and who delivered the potatoes to Beer & Company. Beer & Company denied having any knowledge that the First National Bank was in any way interested in the potatoes or in the bills of lading, but on the contrary believed that Sherman and nobody else was the owner of the potatoes,

and that Tanner, as his agent, had the right to sell them; that after Beer & Company had purchased the potatoes, at the request of the plaintiff, they paid to it in November, 1912, the balance of $382.39 which they owed Sherman in full settlement of the transaction; they aver that the proceeds of sale of the two cars amounted to $758.56 less an amount of $376.17 due to them on a previous transaction, leaving a balance of $382.39.

This suit was not filed until December 5, 1913.

There was judgment for defendant and plaintiff has appealed.

The theory upon which this suit is brought is that the potatoes were delivered to Beer & Company without the production of the bills of lading, but upon the obligation assumed by them to obtain and surrender them; that on the failure of Beer & Company to produce the bills of lading, the plaintiff railroad was obliged to pay the First National Bank the value of the potatoes, say $1,320, which it fixes as the damage done to them by Beer & Company in failing to produce the bills of lading.

We do not find the theory is supported by the evidence.

E. F. Sherman testifies that he sold two car loads of potatoes to Jacob Stich of New Orleans, and consigned them to him. He drew two drafts on Stich for the amount, each for $660, which he sold to the First National Bank with bills of lading attached. When Stich refused to accept delivery of the potatoes he sent Tanner down to settle the matter.

The president of the First National Bank testifies that the bank purchased the two drafts with the bills of lading attached and mailed them for collection to the Canal-Louisiana Bank of New Orleans, with instructions to deliver the bills of lading upon payment of the drafts.

Stich did not pay the drafts; they were subsequently paid by the plaintiff railroad.

A. M. Donnaway, clerk of the plaintiff, whose duty was to deliver shipments of produce, testifies that Beer & Company were on the bill of lading bond list, which means that they were allowed from 24 to 48 hours to surrender bills of lading after removing the merchandise in cases when a bill of lading was to order of shipper notify consignee; that he delivered the potatoes to V. Barocco, representative of Beer & Company, on the promise of Raoul Sere, a member of Beer & Company, that he would give him the bill of lading and would protect him.

Raoul Sere denies the correctness of the testimony of Donnaway concerning his promise to procure and deliver the bill of lading. Independent of the fact that this denial would be sufficient to destroy the effect of Donnaway's testimony, we are inclined to believe that it is true. For if, as he testifies, Donnaway knew that Beer & Company were on the bill of lading bond list, why should he have been so much concerned in getting additional assurances from Sere or Beer & Company that they would produce the bill of lading? Unless he understood that the potatoes were not then being delivered to Barocco as the representative of Beer & Company. He also denies that Barocco had any authority from Beer & Company to sign a receipt in their name for these potatoes. He says that he bought the potatoes from Mr. Tanner and Mr. Sutter, both representing Mr. Sherman; that about a week or two afterwards J. W. Cousins, agent of the plaintiff, rang him up to ask if he had remitted to Sherman for the two cars of potatoes, and when he answered that he had not remitted, Cousins asked him not to remit because the bills of lading had not yet been sur-.

rendered; Cousins did not claim that he should deliver the bills of lading or that he had promised to do so. Sere further testifies that on November 15, 1912, Mr. Wilcomb came to him and asked for a check and presented the following letter as his authority, viz:

"Illinois Central Railroad Co.

"Chicago, October 31st, 1912.

"Mr J. W. Cousins, Agent, New Orleans, La.

"Dear Sir:

"Refer to two cars of potatoes that were delivered to J. L. Beer & Company without surrender of original B/L or other authority and for which Beer & Company are holding $382.39 proceeds of sale. Please secure their check for above amount having same made payable to Mr. O. F. Nau, local treasurer, Chicago, Ill. Kindly see that the matter is given preferred attention and the check secured promptly and sent in in order that we may close the claim.

"Yours truly,

"B. D. Bristol, F. C. A.

"C. K. 21386.                                    "J. W. Cousins.
"11/15/12.                                  "Per J. E. Wilcomb."

That thereupon he gave the railroad check No. 21386 for the amount of $382.39 in full settlement of the transaction, and informed Sherman of what he had done.

T. J. Sutter was a broker; Tanner, as Sherman's representative, employed him to sell the two car loads of damaged potatoes consigned to Stich; he sold them to Beer & Company on condition that the potatoes should be resacked and the good ones paid for. Donnaway never spoke to him about the bills of lading until some time after the delivery of the potatoes; he did not make the

— 404 —

sale on condition that Beer & Company should take up the bills of lading; Tanner had been engaged for three or four days resacking the potatoes before he sold them to Beer & Company; "Donnaway asked me about the bills of lading and I told him to see Mr. Tanner about them."

We think the plaintiff has failed to establish the allegations of its petition and that the judgment of the Court below must be affirmed.

Opinion and decree, June 30th, 1915.

Rehearing refused, July 22nd, 1915.

Writ denied, October 20th, 1915.